J-A15042-20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| WILLIAM NICKERSON, | : | |
| | : | |
| Appellant | : | No. 1609 EDA 2019 |

Appeal from the Judgment of Sentence Entered August 2, 2017
in the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0006524-2016
CP-23-CR-0006525-2016
CP-23-CR-0007879-2014

BEFORE:    LAZARUS, J., KING, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:        Filed: December 17, 2020

William Nickerson (Appellant) appeals *nunc pro tunc* from his August

2, 2017 judgment of sentence.  We affirm.

This case has a lengthy and odd procedural history, portions of which

this Court summarized previously.

> On February 9, 2015, Appellant entered a guilty plea, at docket CP-23-CR-0007879-2014 [(2014 indecent exposure case)], to two counts of terroristic threats and one count [] of indecent exposure []. The court sentenced Appellant to time-served to 23 months' imprisonment for the indecent exposure conviction, followed by five years' probation for [the] terroristic threats counts. The court dismissed [two counts of harassment and one count of indecent exposure]. These charges stemmed from improper advances Appellant made to nursing assistants who were attending to his elderly mother.
>
> On November 22, 2016, Appellant entered a guilty plea, at docket CP-23-CR-0006525-2016 [(July 2016 threats case)], to [one count of] terroristic threats that arose out of threats made

*Retired Senior Judge assigned to the Superior Court.

on July 29, 2016. The court dismissed [accompanying] harassment [and ethnic intimidation] charges and sentenced Appellant to two years' probation. Appellant also entered a third guilty plea to an additional charge of terroristic threats, docketed at CP-23-CR-0006524-2016 [(August 2016 threats case)], that arose out of threats made on August 5, 2016. [H]arassment charges were dismissed, and the court sentenced Appellant to a consecutive term of two years' probation.

The 2016 charges stemmed from Appellant's threats to Daniel Siegal, Esquire, and Andy Lewis, both Haverford Township commissioners; Appellant called Siegal and threatened to kill Siegal and everyone in Siegal's office,[4] and he threatened to kill Lewis.

_____
[4] At sentencing, Siegal testified that Appellant called him and said, "I am outside your office[,] I have a machine gun[,] I am coming in and I am going to kill you and everyone in your office." N.T. [], 8/2/17, at 30.

Appellant also terrorized James P. McCans, Haverford Township Director of Emergency Services. In July 2016, Appellant made a telephone call in which he proclaimed that he had raped and murdered McCans' wife and daughter. The trial court noted that Appellant's "campaign of terror" began in 2009, and continued even after his November 22, 2016 sentencing [for the July 2016 threats case and the August 2016 threats case]. Appellant, on the other hand, characterize[d] his threats as "inappropriate comments [made] under the influence of alcohol," and "spontaneous outbursts caused by anger fueled by alcohol."

The 2016 guilty pleas violated Appellant's probation [in the 2014 indecent exposure case]. Following the pleas, the court … sentenced Appellant to full back[-]time of 498 days with immediate parole for his indecent exposure conviction, and three years' probation for terroristic threats, which was consecutive to the probationary terms for the [July 2016 threats case and the August 2016 threats case].[6]

_____
[6] Because Appellant was diagnosed with delusional disorder and had other mental health needs, his cases were handled by the Delaware County Court of Common Pleas Mental Health Court. In order to participate in the

- 2 -

Mental Health Court Program, the defendant must have a serious mental illness … diagnosis (schizophrenia, major mood disorder, psychosis [not otherwise specified], borderline personality disorder) that contributed to the criminal behavior. Persons with co-occurring disorders (mental health and substance use disorder) are evaluated for Mental Health Court Program if they meet the criteria for serious mental illness. [Perpetrators of [c]ertain crimes are excluded from the program, such as felony sex offenses, felony crimes of violence, and felony drug offenses.
https://www.delcoda.com/information/treatment-courts/mental-health-treatment-court (visited 3/11/19).

In April 2017, Appellant was accused of multiple technical violations of his probation: sending harassing letters to former victims, failing to report to his probation officer, consuming alcohol, cutting off his ankle bracelet, and refusing to take his antipsychotic medication. [On August 2, 2017, following a hearing pursuant to *Gagnon v. Scarpelli*, 411 U.S. 778 (1973),] at which Appellant stipulated to his violations, the court sentenced Appellant to an aggregate term of imprisonment of [10 to 20] years. Judgment of sentence was entered on the docket on August 8, 2017. A motion for reconsideration of sentence was filed [by Appellant's privately-retained counsel, Tracie M. Burns], on August 9, 2017, and on August 16, 2017, the court denied reconsideration. …

[Notwithstanding his representation by Attorney Burns, Appellant filed *pro se* a notice of appeal on August 9, 2017, which was docketed in this Court at 2638 EDA 2017 (2017 appeal). Following] counsel's motion to discontinue that appeal, this Court entered an order remanding to the trial court for a determination as to whether [Attorney Burns] had abandoned Appellant, and to "take further action as required to protect [Appellant's] right to appeal[.]" [Order in 2017 appeal, 12/20/17]. The order stated that "upon consideration of counsel's application for discontinuance of the appeal, and the *pro se* correspondence requesting the appeal proceed, the application for discontinuance is denied." *Id.*[7]

_____

[7] This Court's order reads in [relevant part], as follows:

Upon review of the Court of Common Pleas of Delaware County dockets, it appears Appellant is still represented by counsel. There is no indication on the [] dockets that privately retained counsel, [Attorney Burns] was granted leave to withdraw from the case pursuant to Pa.R.Crim.P. 120(A)(4). There is no indication on the [] dockets that the Delaware County Office of Judicial Support complied with Pa.R.Crim.P. 576(A)(4), by notifying counsel that Appellant had filed a *pro se* notice of appeal. On three occasions, September 5, 2017, October 5, 2017, and November 27, 2017, Attorney Burns failed to file a timely Criminal Docketing Statement. Attorney Burns also failed to respond to this Court's Order to show cause issued on November 15, 2017.

There appearing no docket entries in the trial court showing that counsel was permitted to withdraw and that the Office of Judicial Support notified counsel of the *pro se* filing, this matter is REMANDED for 30 days for a determination as to whether counsel has abandoned Appellant and **to take further action as required to protect Appellant's right to appeal, including, but not limited to, determining Appellant's eligibility for court**[-]**appointed counsel.** If Appellant is found to be eligible for court-appointed counsel, then the trial court shall appoint counsel for Appellant. The trial court shall transmit to this Court within the thirty-day period a written notice of all findings and any actions taken thereon.

[***]

Order [in 2017 appeal, 12/20/17] (emphasis added).

In accordance with this Court's order, the trial court conducted a hearing on January 31, 2018. Both Appellant and

- 4 -

[Attorney Burns] testified. Thereafter, the trial court made the following findings of fact:

> 1. Appellant has expressed a desire to withdraw his pending appeal before the Superior Court and, instead, permit this court to rule on a pending motion for reconsideration of sentence [*nunc pro tunc*, filed December 15, 2017, by Attorney Burns]. This court agrees that this request is reasonable under the circumstances.
>
> 2. Appellant has expressed a desire that [Attorney Burns] represent him in the motion for reconsideration of sentence.
>
> 3. [Attorney Burns] has agreed to represent [Appellant] in the motion for reconsideration of sentence.

Findings of Fact, 2/14/18.

On February 12, 2018, Appellant, through counsel, filed a *praecipe* to withdraw and discontinue [the 2017] appeal, which this Court granted on February 13, 2018. []

On March 28, 2018, the trial court held a hearing on Appellant's *nunc pro tunc* motion for reconsideration of sentence. On April 12, 2018, Attorney Burns filed a motion to withdraw as counsel, which the trial court granted. ***See*** Order, 4/18/18. On May 14, 2018, the court denied Appellant's *nunc pro tunc* motion for reconsideration of sentence. That order also informed Appellant that he had "a right to file an appeal from this Order by filing a Notice of Appeal to the Superior Court within [30]) days of the date this Order is docketed by the Office of Judicial Support." ***See*** Order, 5/14/[2018].[8]

_____

[8]On March 29, 2018, Appellant filed a *pro se* petition under the Post Conviction Relief Act, 42 Pa.C.S.[] §§ 9541-9546 (PCRA). Thereafter, on June 2, 2018, Appellant filed a request to withdraw that petition. There is no indication in the docket that that petition was withdrawn; however, at the time Appellant filed this petition, he was represented by counsel. His *pro se* petition, therefore, was an improper

> hybrid filing and a nullity. ***See Commonwealth v. Ali***, 10 A.3d 282, 293 (Pa. 2010) (*pro se* filing by represented defendant constitutes "legal nullity"); ***see also Commonwealth v. Ellis***, 626 A.2d 1137, 1139 (Pa. 1993) ("[T]here is no constitutional right to hybrid representation either at trial or on appeal.").

> On June 7, 2018, Appellant filed a *pro se* notice of appeal from the May 14, 2018 order denying reconsideration of the August 2, 2017 sentence.

***Commonwealth v. Nickerson***, 216 A.3d 364 (Pa. Super. 2019) (unpublished memorandum at 1-8) (party designation altered; some citations and footnotes omitted).

Appellant's June 7, 2018 *pro se* notice of appeal was docketed in this Court at 1929 EDA 2018 (2018 appeal). Upon review, this Court determined that Appellant's notice of appeal in the 2018 appeal was not filed timely from the August 2, 2017 judgment of sentence. In the context of a sentence following a revocation of probation, the filing of a post-sentence motion seeking to revoke the sentence does not toll the appeal period, and any appeal must be filed within the 30 days after the sentence was announced in open court. ***Nickerson***, *supra* (unpublished memorandum at 7-8) (citing Pa.R.Crim.P. 708(E) ("The filing of a motion to modify sentence will not toll the 30-day appeal period."), Pa.R.Crim.P. 903(a) (providing for an appeal period of 30 days), and ***Commonwealth v. Parlante***, 823 A.2d 927, 929 (Pa. Super. 2003) ("An appellant whose revocation of probation sentence has been imposed after a revocation proceeding has 30 days to appeal her

sentence from the day her sentence is entered, regardless of whether or not she files a post-sentence motion."). Nevertheless, this Court remanded the case to the trial court because it could not ascertain whether the trial court had complied with its remand order in the 2017 appeal. This Court noted several problems.

First, on the record at his August 2, 2017 sentencing hearing, Appellant requested that Attorney Burns file an appeal from his judgment of sentence. *Nickerson, supra* (unpublished memorandum at 8 n.9) (citing N.T., 8/2/17, at 79-80). She did not do so, and when Appellant filed the 2017 appeal *pro se*, she did not respond to multiple inquiries from this Court or file documents on his behalf despite still appearing as counsel of record at the time. *Id.*

Second, Appellant was never informed that he had 30 days from his judgment of sentence to file a direct appeal or that a motion to modify, even if timely filed, would not toll the 30-day appeal period. *Id.* (unpublished memorandum at 9-10).

Third, this Court determined that Attorney Burns and the trial court "induced" Appellant to discontinue his timely-filed *pro se* 2017 appeal in favor of a second motion for reconsideration, which was untimely-filed, mirrored Appellant's first motion for reconsideration except for the addition of the phrase *nunc pro tunc*, and did not operate to preserve Appellant's

appeal rights in the event it was denied. *Id.* (unpublished memorandum at 11).

Fourth, after holding a hearing wherein the trial court and Attorney Burns convinced Appellant to withdraw his 2017 appeal, and another hearing wherein Attorney Burns presented the second motion for reconsideration, the trial court gave Attorney Burns leave to withdraw from representing Appellant. The trial court permitted Attorney Burns to withdraw before it entered the order denying the second motion for reconsideration, and the trial court never ascertained whether Appellant was entitled to court-appointed counsel for an appeal and/or waived any such right. Thus, Appellant filed his notice of appeal in the 2018 appeal *pro se* without the trial court ever determining whether Appellant was entitled to counsel or waived the right to counsel voluntarily and intelligently. *Id.* (unpublished memorandum at 8-10).

This Court concluded that there was a breakdown in the operation of the trial court and "[d]espite our instruction [in the 2017 appeal] to protect [Appellant's] direct appeal rights [on remand,] …. the various procedural missteps here amounted to a deprivation of those rights." *Id.* Therefore, we remanded again, this time "for reinstatement of Appellant's appellate rights *nunc pro tunc*, a determination of whether Appellant waived his right to counsel at the appellate stage and, if necessary, appointment of counsel." *Nickerson*, *supra* (unpublished memorandum at 12) (citing

*Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998) (holding that a hearing is required to determine if defendant's waiver of right to counsel at appellate stage is knowing, intelligent and voluntary)).

On remand from the 2018 appeal, the trial court issued an order "hereby" reinstating Appellant's appellate rights and informing Appellant that he may file a direct appeal from his 2017 sentence by filing "a [n]otice of [a]ppeal within [60] days of this [o]rder." Order, 5/23/2019, at 1. The order also scheduled a *Grazier* hearing for the following month. *Id.* Five days later, the trial court issued an amended order. Once again, the trial court informed Appellant that it was "hereby" reinstating his appellate rights and Appellant may file "a [n]otice of [a]ppeal" within 60 days of the date of the amended order. Order, 5/28/2019, at 1. The order also re-scheduled the *Grazier* hearing until July 3, 2019. *Id.*

Meanwhile, on June 3, 2019, in accordance with the trial court's order but prior to the *Grazier* hearing, Appellant *pro se* filed the instant notice of appeal. He listed the docket numbers at the 2014 indecent exposure case, the July 2016 threats case, and the August 2016 threats case on the single notice of appeal. Upon receipt of Appellant's notice of appeal, this Court docketed the appeal at 1609 EDA 2019 (the 2019 appeal).

On June 12, 2019, this Court issued a rule to show cause as to why it should not quash the 2019 appeal pursuant to *Commonwealth v. Walker*, 185 A.3d 969 (Pa. 2018) (holding that Pa.R.A.P. 341(a) and its Note require

- 9 -

the filing of separate notices of appeal when a single order resolves issues arising on more than one trial court docket). Appellant responded, and this Court discharged the rule to show cause and referred the issue to the merits panel for consideration.

On July 3, 2019, the trial court conducted a *Grazier* hearing. At the time of the *Grazier* hearing, this Court's rule to show cause was still pending. Without referencing either of its May 2019 orders reinstating Appellant's appellate rights, the trial court began the hearing by stating that it was "going to reinstate your appellate rights as of the end of the hearing…. You will have 30 days in which to renew your appeal or file a new appeal…" N.T., 7/3/2019, at 5. Appellant requested to proceed *pro se*, even after the trial court informed him that he had the right to be represented by an attorney and that the court would appoint one for him if he could not afford an attorney. *Id.* at 5-6. In response to a question by the assistant district attorney, Appellant admitted that he had been diagnosed with delusional disorder previously, but contended that diagnosis was not accurate and he suffered only from alcoholism. *Id.* at 9-10. The Commonwealth requested that the trial court order a competency evaluation in order to assess whether Appellant was competent to represent himself on appeal and whether his waiver of counsel was knowing, voluntary, and intelligent. *Id.* at 10. The trial court ordered Appellant to undergo a competency evaluation and continued the hearing.

The psychologist who conducted the competency evaluation concluded Appellant was competent to stand trial. Thereafter, the **Grazier** hearing resumed on July 31, 2019. Once again, Appellant stated he wished to represent himself. N.T., 7/31/2019, at 5. Appellant indicated that he understood that he was going to be held to the same rules as an attorney, that if he did not preserve issues properly the issue could be lost, and that he needed to assert timely arguments or they could be lost. **Id.** at 17-18. The assistant district attorney informed Appellant that if he represented himself on appeal, Appellant could not challenge his own ineffectiveness in a collateral PCRA petition. **Id.** at 17-18, 20. Both the trial court and the assistant district attorney advised Appellant as to the benefit of proceeding with counsel, but Appellant still declined.

There were multiple confusing exchanges between Appellant and the trial court during the hearing. The trial court informed Appellant on the record that his appellate rights "are reinstated as of today" and told him he had "30 days in which to go through the steps again." **Id.** at 8. Appellant responded by informing the trial court that he already had an active appeal before this Court (*i.e.*, the 2019 appeal). The trial court told him that "as far as I am concerned and as far as the Superior Court is concerned that is a [nullity]. You have to start from scratch again." **Id.** There were several more exchanges like this one, where the trial court insisted that Appellant had to file a new notice of appeal within 30 days and that any prior appeal was a

nullity because they had not held a *Grazier* hearing. For example, after the trial court again told Appellant that his appellate rights were being reinstated "now," the following exchange occurred.

> [Appellant]: But my understanding is [the Superior Court] restored my [appellate] right[s] in April. And on May 23rd you issued an order giving me 60 days to file an appeal.
>
> THE COURT: I am not giving you 60 days, I am giving you 30 days from today to file an appeal.
>
> [Appellant] But you gave me 60 days from May 23rd.
>
> THE COURT: Not a PCRA. Listen to me.

*Id.* at 9. At various points, despite Appellant's insistence to the court that he had filed a new notice of appeal in response to the trial court's May 23, 2019 order, and that the trial court no longer had jurisdiction, the trial court told him three times "there is no appeal" and claimed it did not know which order he appealed from, but any order was a nullity because it had been issued prior to the *Grazier* hearing. *Id.* at 12-13. The hearing concluded by the trial court stating, "[r]ight now your appeal rights are back to day one. Go ahead, represent yourself." *Id.* at 20.

Following the hearing, the trial court entered an order stating that it found Appellant's waiver of his right to counsel to be knowing, voluntary, and intelligent. Order, 8/15/2019, at ¶ 10. It noted Appellant's past diagnosis of delusional disorder, but determined there was no current evidence of such a disorder based upon the competency evaluation. The trial

court then stated that although Appellant "has made various procedural errors in his attempt to represent him[self], these can be remedied by wiping the slate clean and allowing him to start afresh." *Id.* Once again, the trial court purported to reinstate Appellant's appellate rights, this time telling Appellant that he must file a notice of appeal within 30 days of the order and cautioning Appellant about the requirements of *Walker*.

On September 10, 2019, the trial court entered yet another order related to Appellant's appellate rights. The trial court stated based upon letters from Appellant, it learned that Appellant had not received a full and complete copy of the August 15, 2019 order. In response, the trial court gave Appellant 60 days from the August 15, 2019 order to file a new notice of appeal. It also informed Appellant that "[t]o remedy the *Walker* mistake, [Appellant] should start his appeal afresh by filing separate notices of appeal in each of the court dockets referenced above. This [o]rder extends his time to do so until October 14, 2019." Order, 9/10/2019, at 2 n.2.

In an order entered on October 15, 2019, the trial court changed course, this time informing Appellant that "notwithstanding portions of prior [o]rders to the contrary, and after consulting with Superior Court Criminal Appeals Unit personnel, it is hereby [ordered that Appellant's] [n]otices of [a]ppeal of [the trial court's] August 2, 2017 [o]rder(s) are deemed filed under the above [c]ourt of [c]ommon [p]leas and Superior Court docket numbers." Order, 10/15/2019, at 1.

Meanwhile, Appellant did not file any further notices of appeal, and this appeal proceeded. Ultimately, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) and accepted a Rule 1925(b) concise statement of matters complained of on appeal that Appellant had filed on his own initiative. On appeal, Appellant raises a single issue for our review: "[w]hether the [t]rial [c]ourt abused its discretion, lacked impartiality, and engaged in unethical activities when it sentenced [Appellant] to 20 [] years [of incarceration] for a technical probation violation with all the original charges [being] misdemeanors." Appellant's Brief at 4.

Before we may consider the merits of Appellant's issue, there are preliminary matters we must examine first. Because this case returns to us from remand in which we directed the trial court to reinstate Appellant's appellate rights *nunc pro tunc*, determine whether Appellant waived his right to counsel at the appellate stage, and appoint counsel if necessary, **Nickerson**, **supra** (unpublished memorandum at 12), we first determine whether the trial court complied with our instructions. "It is axiomatic that the court below, on remand, must comply strictly with the mandate of the higher court." **Commonwealth v. Williams**, 877 A.2d 471, 474-75 (Pa. Super. 2005).

Inexplicably, the trial court's May 23, 2019 order reinstated Appellant's appellate rights and provided 60 days for him to file a notice of appeal **before** it determined on the record whether Appellant knowingly,

voluntarily, and intelligently waived his right to counsel. Appellant had the right to counsel at a hearing revoking a probationary sentence, and that right to counsel extends to any appeals therefrom. ***See Commonwealth v. Murphy***, 214 A.3d 675, 679 n.3 (Pa. Super. 2019) (explaining Pa.R.Crim.P. 708(B)(1) provides the trial court "shall not" revoke a probationary sentence unless a violation is found following a hearing "at which the defendant is present and represented by counsel"); Pa.R.Crim.P. 122(B)(2) (providing that appointment of counsel "shall be effective until judgment, including any proceedings upon direct appeal"). Appellant was entitled to the assistance of counsel in filing a notice of appeal. If he chose to waive his right to counsel, the trial court needed to ensure that he did so knowingly, voluntarily, and intelligently **before** Appellant's case could proceed. ***Accord Murphy***, 214 A.3d at 678-79 ("[T]his Court has a duty to review whether Murphy properly waived his right to counsel **prior to** the presentation of evidence against him at the violation of probation hearing.") (emphasis added; citation and internal quotation marks removed).

While we could remand and instruct the trial court to conduct another ***Grazier*** hearing and then to reinstate Appellant's appellate rights, we conclude that another remand is not necessary to protect Appellant's right to counsel. The trial court eventually conducted a ***Grazier*** hearing in two parts after Appellant filed a notice of appeal. ***See generally*** N.T., 7/3/2019 and N.T., 7/31/2019. Based upon Appellant's answers to the colloquy during the

- 15 -

hearings and the results of his competency evaluation, the trial court determined that Appellant waived his right to counsel knowingly, voluntarily, and intelligently.[1] Order, 8/15/2019, at 10. Appellant has neither challenged

---

[1] In its brief, the Commonwealth notes it had opposed Appellant's motion to proceed *pro se* before the trial court. The Commonwealth's opposition was based upon Appellant's prior diagnosis of delusional disorder, "best practice" in Mental Health Court, and its belief that Appellant does not have the technical legal knowledge to present his case effectively on appeal. Commonwealth Brief at 12.

Notwithstanding Appellant's past diagnosis of delusional disorder, at the time he waived his right to counsel, the trial court determined Appellant was not displaying evidence of delusions. Order, 8/15/2019, at 10. Moreover, the psychologist who conducted the competency evaluation concluded that Appellant was competent to stand trial. The standards for standing trial and waiving the right to counsel are the same; both standards require that the defendant to have the mental capacity and ability to understand the proceedings. ***Commonwealth v. Starr***, 664 A.2d 1326, 1339 (Pa. 1995) (citing ***Godinez v. Moran***, 509 U.S. 401 n. 12 (1993)). So long as the court is satisfied that a defendant is competent, a defendant's history of psychiatric illness does not render him incapable of waiving the right to counsel intelligently. ***Id.*** at 1338-39.

Furthermore, all defendants have the constitutional right to represent themselves without the assistance of counsel. ***See Faretta v. California***, 422 U.S. 806, 821 (1975) (holding accused has a right to conduct own defense that is implicit in the structure of the Sixth Amendment); ***Commonwealth v. Szuchon***, 484 A.2d 1365, 1376-77 (Pa. 1984) (holding accused has a right to conduct own defense pursuant to Article 1, Section 9 of the Pennsylvania Constitution). "[T]his highly personal constitutional right operates to prevent a state from bringing a person into its criminal courts and in those courts force a lawyer upon him when he asserts his constitutional right to conduct his own defense." ***Starr***, 664 A.2d at 1334. "[B]oth the Federal Constitution and the Pennsylvania Constitution require only that in order to validly assert the right to self-representation, a defendant's waiver of the corollary right to counsel be knowing, intelligent and voluntary." ***Id.*** Although understandably tempting, the trial court may not consider a defendant's best interests, including the risk that the
*(Footnote Continued Next Page)*

the validity of his waiver of counsel nor requested counsel. We have reviewed the notes of testimony from the *Grazier* hearings, and, notwithstanding the tardiness of the hearings, we are satisfied that the colloquy of Appellant during the hearings complied with Pa.R.Crim.P. 121.[2]

---

*(Footnote Continued)* ————————————

defendant may represent himself less effectively than an attorney, or a defendant's "technical legal knowledge and courtroom skill." *Id.* at 1336-37.

[2] Rule 121 permits a defendant to waive the right to be represented by counsel. Pa.C.R.P. 121(A)(1). Subsection (A)(2) sets forth the requirements for a valid waiver.

(2) To ensure that the defendant's waiver of the right to counsel is knowing, voluntary, and intelligent, the judge or issuing authority, at a minimum, shall elicit the following information from the defendant:

(a) that the defendant understands that he or she has the right to be represented by counsel, and the right to have free counsel appointed if the defendant is indigent;

(b) that the defendant understands the nature of the charges against the defendant and the elements of each of those charges;

(c) that the defendant is aware of the permissible range of sentences and/or fines for the offenses charged;

(d) that the defendant understands that if he or she waives the right to counsel, the defendant will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules;

(e) that the defendant understands that there are possible defenses to these charges that counsel might be aware of, and if these defenses are not raised at trial, they may be lost permanently; and

*(Footnote Continued Next Page)*

Our second directive was to ensure Appellant's right to appeal has been protected. Notwithstanding all of the confusion that followed, in response to the May 23, 2019 order reinstating his appellate rights *nunc pro tunc*, Appellant timely filed a notice of appeal. While this protected his right to appeal, we must determine whether his notice of appeal complied with ***Walker***.

Appellant's filing of a single notice of appeal from his judgment of sentence entered at multiple docket numbers ordinarily would constrain us

*(Footnote Continued)* ────────────

> (f) that the defendant understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently; and that if errors occur and are not timely objected to, or otherwise timely raised by the defendant, these errors may be lost permanently.

Pa.R.Crim.P. 121(A)(2).

"A defendant cannot 'knowingly, voluntarily, and intelligently' waive counsel" within the meaning of Rule 121 "until informed of the full ramifications associated with self-representation." ***Commonwealth v. Robinson***, 970 A.2d 455, 460 (Pa. Super. 2009) (*en banc*). "In order to make a knowing and intelligent waiver, the individual must be aware of both the nature of the right and the risks and consequences of forfeiting it." ***Commonwealth v. Houtz***, 856 A.2d 119, 123 (Pa. Super. 2004) (citation omitted). Accordingly, a colloquy that complies with the relevant parts of Rule 121(A)(2) is required before the trial court may permit a defendant to proceed without counsel. ***Id.***; ***Murphy***, 214 A.3d at 678-79 ("Failing to conduct an on the record colloquy pursuant to Rule 121(c) before allowing a defendant to proceed *pro se* constitutes reversible error."). "[W]ithout a colloquy the court cannot ascertain that the defendant fully understands the ramifications of a decision to proceed *pro se* and the pitfalls associated with his lack of legal training." ***Robinson***, 970 A.2d at 460.

to quash his appeal pursuant to **Walker**'s bright-line rule requiring separate notices of appeal. However, "we may overlook the requirements of **Walker** where … a breakdown occurs in the court system, and a defendant is misinformed or misled regarding his appellate rights." **Commonwealth v. Larkin**, 235 A.3d 350, 354 (Pa. Super. 2020) (*en banc*) (holding that a breakdown occurred when the lower court informed Larkin that he had thirty days to file "**an** appeal" despite the need to file separate notices of appeal at each docket number); **Commonwealth v. Stansbury**, 219 A.3d 157 (Pa. Super. 2019) (same in the PCRA context).

Here, like the orders in **Larkin** and **Stansbury**, in its first order reinstating Appellant's appellate rights, the trial court misled Appellant that he may file a direct appeal from his 2017 sentence by filing "**a** [n]otice of [a]ppeal within [60] days of this [o]rder." Order, 5/23/2019, at 1 (emphasis added). The trial court also used the singular in its amended order entered five days later. Order, 5/28/2019, at 1 (informing Appellant that he may file "**a** [n]otice of [a]ppeal").[3] Moreover, as discussed *supra*, the trial court

---

[3] The trial court exacerbated the matter by continuing to misinform and mislead Appellant. After Appellant filed his notice of appeal, and while the Superior Court's rule to show cause was pending, the trial court purported to reinstate Appellant's appellate rights three more times: at the first **Grazier** hearing, at the second **Grazier** hearing, and in the August 15, 2019 written order following those hearings. It also purported to reinstate Appellant's appellate rights after the Superior Court discharged the rule to show cause on September 3, 2019, and referred the **Walker** issue to this panel. **See** Trial Court Order, 9/10/2019. In total, the trial court informed Appellant six
*(Footnote Continued Next Page)*

erroneously issued these orders before ensuring that Appellant's waiver of his right to counsel was knowing, intelligent, and voluntary. Based on the foregoing breakdown in court operations and failure to ensure Appellant's right to counsel was protected, we have no difficulty concluding that we should overlook the **Walker** violation in this case.

We may proceed now to the merits. Appellant's lone issue on appeal concerns a challenge to the discretionary aspects of his sentence following the revocation of his probation. Although our scope of review following a judgment of sentence imposed after the revocation of probation is not unlimited, this issue falls within the scope of matters we may examine. **See Commonwealth v. Starr**, 234 A.3d 755, 759 (Pa. Super. 2020) ("In reviewing an appeal from a judgment of sentence imposed after the revocation of probation, this Court's scope of review includes the validity of the hearing, the legality of the final sentence, and if properly raised, the discretionary aspects of the appellant's sentence.").

*(Footnote Continued)* ──────────

different times that it was reinstating his appellate rights and provided him with six different compliance deadlines. It twice incorrectly informed Appellant that he could "wipe the slate clean" as to **Walker** and "start his appeal afresh" by filing new notices of appeal. Trial Court Order, 8/15/2019, at ¶ 10; 9/10/2019, at 2 n.2. It did so at a time when the Superior Court had jurisdiction over the appeal. **See** Pa.R.A.P. 1701(a) (limiting the trial court's actions after a notice of appeal has been filed). At the time it issued its August 15, 2019 order, the Superior Court's rule to show cause was still pending.

Nevertheless, "[a]n appellant wishing to appeal the discretionary aspects of a probation-revocation sentence has no absolute right to do so but, rather, must petition this Court for permission to do so." *Commonwealth v. Kalichak*, 943 A.2d 285, 289 (Pa. Super. 2008). Before this Court can address such a discretionary challenge, an appellant must invoke this Court's jurisdiction by establishing that (1) the appeal was timely filed; (2) the challenge was properly preserved by objecting during the revocation sentencing or in a post-sentence motion; (3) his or her brief includes a concise statement of the reasons relied upon for allowance of appeal of the discretionary aspects of the sentence pursuant to Pa.R.A.P. 2119(f); and (4) the Rule 2119(f) statement raises a substantial question that the sentence is inappropriate under the Sentencing Code. *Commonwealth v. Swope*, 123 A.3d 333, 338 (Pa. Super. 2015).

Appellant timely filed a notice of appeal *nunc pro tunc* and included a Rule 2119(f) statement in his brief. However, while Appellant did file a post-sentence motion through Attorney Burns, the argument he raised in the motion differs from the argument he presents on appeal. To preserve a discretionary-aspects-of-sentence challenge properly, the **specific argument** on appeal must have been presented to the trial court in the form of an objection at sentencing or in the post-sentence motion. *See Commonwealth v. Rivera*, 238 A.3d 482, 499 (Pa. Super. 2020) (quoting *Commonwealth v. Rush*, 959 A.2d 945, 949 (Pa. Super. 2008) ("[F]or any

claim that was required to be preserved, this Court cannot review a legal theory in support of that claim unless that particular legal theory was presented to the trial court.")).

On appeal, Appellant argues that the trial court did not act impartially and abused its discretion by imposing a sentence that is excessive in comparison to his technical violations of probation and his original misdemeanor charges, and failed to consider mitigating factors such as his age, alcoholism, and history of non-violence. Appellant's Brief at 15-17. In the post-sentence motion filed by Attorney Burns, on the other hand, the trial court was presented with an argument that the sentence was excessive because the trial court failed to consider Appellant's untreated mental health disorder. Specifically, Attorney Burns referenced Appellant's delusional disorder and his denial that he had the same, and argued the trial court should reconsider Appellant's sentence because this disorder can cause individuals to resist taking medication, and the disorder played a role in Appellant's criminal behavior.

Our review of the August 2, 2017 sentencing hearing does not reveal any objections that have preserved the specific arguments Appellant wishes to present on appeal. Accordingly, Appellant has not preserved the argument he presents on appeal, and he has failed to invoke our jurisdiction to review his discretionary aspects of sentencing claim. Therefore, we are unable to

review his discretionary aspects of sentencing claim and are constrained to affirm his judgment of sentence.[4]

Judgment of sentence affirmed.

---

[4] The Commonwealth urges us to remand in order to reinstate Appellant's post-sentence rights. In its brief, the Commonwealth recognizes that Appellant's arguments on appeal have not been preserved before the trial court, and emphasizes that Appellant never had a chance to file a post-sentence motion *pro se*. Commonwealth's Brief at 15. It contends if we were able to reach the merits, there are several indicators that the trial court's sentence of 10 to 20 years imprisonment was excessive compared to the technical violations of probation by an individual in mental health court. **See** Commonwealth's Brief at 17-21 (emphasizing that trial court ran four sentences consecutively for an aggregate sentence of 10 to 20 years, sentence was for violations of the conditions of probation and not commission of new crimes, Appellant's probation officer recommended an aggregate sentence of 7½ to 15 years, and immediately before sentencing the trial court stated "life is just more interesting for these people when they are indulging their mental illness" (citing N.T., 8/2/2017, at 72); also positing Appellant's refusal to take antipsychotic medication and allegations of homosexual overtures against parole/probation officer were not valid reasons to impose sentence of maximum confinement, plus many of Appellant's threats were "fantastical").

However, we are unable to reinstate Appellant's post-sentence rights at this juncture. This case returns to us from remand, where we directed the trial court to reinstate "Appellant's appellate rights *nunc pro tunc*" based upon Attorney Burns's abandonment of Appellant in the 2017 appeal and inducement to withdraw the 2018 appeal. Attorney Burns did file timely a post-sentence motion on Appellant's behalf before abandoning him in the 2017 appeal. Any claim that Attorney Burns failed to preserve certain discretionary aspects of sentencing claims for appeal would need to be presented to the trial court in a timely-filed PCRA petition at the conclusion of direct review for consideration by the trial court at that time.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 12/17/20