COMMONWEALTH of Pennsylvania,
Appellee

v.

Gomer Robert WILLIAMS,
Jr., Appellant.

Superior Court of Pennsylvania.

Argued March 2, 2005.

Filed June 9, 2005.

Joseph P. Burt, Public Defender, Erie, for appellant.

John Daneri, Assistant District Attorney, Erie, for Commonwealth, appellee.

Before: FORD ELLIOTT, MUSMANNO, and LALLY–GREEN, JJ.

OPINION BY LALLY–GREEN, J.:

¶ 1 In *Commonwealth v. Williams*, 574 Pa. 487, 832 A.2d 962 (2003), our Supreme Court held that Megan's Law II [1] was, in most respects, constitutional. The Court also held that the registration requirements that were unconstitutionally punitive were severable. The Court remanded the case of Appellant Gomer Robert Williams, Jr., together with its companion case of *Commonwealth v. Peters*, 574 Pa. 487, 832 A.2d 962 (2003), for the trial court to review additional issues not decided by the Supreme Court. *Id.* at 986–987. On remand, without holding a hearing, the trial court rejected Appellant's remaining constitutional challenges to Megan's Law II. We vacate the trial court's order. and remand for further proceedings.

¶ 2· The record reflects [2] the following history of the case, as set forth by the trial court:

On July 27, 2000, [Appellant] Gomer Williams sexually assaulted a 17–year–old girl at knifepoint in the women's restroom of a movie theater. On March 21, 2001, Williams pled guilty to rape,

---

1. 42 Pa.C.S.A. §§ 9791–9799.7.

2. The trial court did not order Appellant to file a Pa.R.A.P.1925(b) statement, and none was filed.

involuntary deviate sexual intercourse ("IDSI"), aggravated assault, terroristic threats, and possessing instruments of crime.[1]

1 See 18 Pa.C.S.A. §§ 3121, 3123, 2702, 2706, and 907, respectively.

As rape and IDSI are predicate offenses triggering an adjudication of sexually violent predator status under Pennsylvania's Registration of Sexual Offenders Act ("Megan's Law II" or "the Act"),[3] see 42 Pa.C.S.A. §§ 9795.1(b)(2), this court ordered the State Sexual Offenders Assessment Board ("the Board") to evaluate whether Williams was a sexually violent predator [ ("SVP") ]. Thereafter, on March 26, 2001, Williams filed a Motion for Extraordinary Relief, arguing that the [SVP] provisions of Megan's Law II violate the United States and Pennsylvania Constitutions. By opinion and order dated June 20, 2001, this court granted the motion and declared the challenged provisions unconstitutional.

\* \* \* \* \* \*

Argument on [Appellant's and Peters's] consolidated direct appeals was heard by the Pennsylvania Supreme Court on April 8, 2002. The Supreme Court issued its decision on September 23, 2003, in which it struck down one provision of the Act as excessive and therefore punitive, but held that this unconstitutional penalty provision was severable from the Act and that the Act, when viewed in its entirety, was constitutional, not punitive. The Supreme Court also remanded to this court the remaining constitutional issues raised by [Appellant and Peters].

\* \* \* \* \* \*

In the case at bar, the Supreme Court has remanded to this court the remaining constitutional issues raised by [Appellant and Peters] dealing with Megan's Law II. In footnote 27 of *Commonwealth v. Williams*, 574 Pa. 487, 832 A.2d 962 (2003) ("*Williams II* "), the Court set forth exactly which constitutional issues remained and were to be considered by this court at this time. Those issues include [Appellant's and Peters's] claims that Megan's Law II:(1) is void for vagueness; (2) is violative of substantive due process guarantees; (3) is violative of the separation of powers doctrine; and (4) contains more than one subject in contravention of Article 3, § 3 of the Pennsylvania Constitution.

Trial Court Opinion, 1/27/04, at 2–4 (footnotes omitted).

¶ 3 On remand, as indicated above, the trial court did not hold a hearing. In the belief that it was bound by intervening Superior Court precedent, the trial court held that Megan's Law II was constitutional with respect to issues (1), (2), and (4) above. That is, the court held that Megan's Law II is not void for vagueness, does not violate substantive due process guarantees, and does not violate the "one-subject" rule of Pa. Const. Article 3, section 3. This appeal followed.

¶ 4 Appellant raises two questions for review:

1. Did not the trial court err following a remand by the Pennsylvania Supreme Court when it denied appellants' joint request for an evidentiary hearing on their motion challenging the constitutionality of Megan's Law II, where in applying the "excessiveness" prong of the [*Kennedy v.*] *Mendoza–Martinez* [, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963) ] test for punishment the Pennsylvania Supreme Court had identified two

3. 42 Pa.C.S.A. §§ 9791–9799.7.

aspects of statute [sic] for which it declared that "[a] reasonable argument could be made" that the statute was excessive in relation to any civil purpose that might be assigned, and had noted that "[n]othing in this opinion should be read to foreclose the proffer of competent evidence on remand"?

2. Did not the trial court err in denying the appellants' constitutional claims without first holding an evidentiary hearing on the issue of whether aspects of the statute were excessive, where the validity of many of those claims rests upon the question of whether the statute's provisions are rendered punitive [or] indefensible by their excessiveness?

Appellant's Brief at 5.

¶ 5 The two issues are restatements of the same claim, namely, that the trial court did not comply with the Supreme Court's remand order. Specifically, Appellant claims that the trial court was ordered to consider "the possibility that certain aspects of the sexually violent predator ["SVP"] provisions were excessive in relation to their alleged remedial purpose and, therefore, were punitive." Appellant's Brief at 12. Appellant continues: "The trial court did not address, despite a specific command, the punitiveness claim. Thus, it flaunted the High Court's order which forbade the foreclosing of a proffer of competent evidence on remand." *Id.* Appellant's second argument is essentially the same, alleging that Appellant could not establish the excessiveness of SVP provisions without an evidentiary hearing in the trial court. *Id.* at 28–29.

¶ 6 To evaluate these arguments, we must examine the Supreme Court's remand order. The order was as follows:

In the absence of competent and credible evidence undermining the relevant legislative findings, Megan's Law's registration, notification, and counseling provisions constitute non-punitive, regulatory measures supporting a legitimate governmental purpose. Therefore, these measures are presently upheld against [Appellant's] claim that they result in additional criminal punishment. The prescribed penalties for failure to register and verify one's residence as required are unconstitutionally punitive, but severable. Accordingly, those provisions are invalidated, and the matter is remanded to the trial court for consideration of [Appellant's] remaining constitutional challenges.[27]

27 In addition to claiming that Megan's Law is punitive, [Appellant] asserts that it is void for vagueness and violative of substantive due process guarantees and the separation of powers doctrine. [Appellant] also maintain[s] that the statute contains more than one subject in contravention of Article III, Section 3 of the Pennsylvania Constitution.

*Williams*, 832 A.2d at 986–987 (emphasis added).[4]

 ¶ 7 A trial court has an obligation to comply scrupulously, meticulously, and completely with an order of the Supreme Court remanding a case to the trial court. *Nigro v. Remington Arms Co.*, 432 Pa.Super. 60, 637 A.2d 983, 988 (1993). This Court stated in *Nigro:* "It is well-settled that a trial court must strictly comply with

---

4. We note that the trial court omitted the first issue (punitiveness) when it listed the issues it was to consider on remand. The court listed the issues as follows: Megan's Law II:(1) is void for vagueness; (2) is violative of substantive due process guarantees; (3) is violative of the separation of powers doctrine; and (4) contains more than one subject in contravention of Article 3, § 3 of the Pennsylvania Constitution. Trial Court Opinion, 1/27/04, at 4.

the mandate of the appellate court." We then quoted the remand order of the Supreme Court and held that the trial court exceeded the scope of the mandate of the Supreme Court by considering an issue not included in the mandate. *Id.* We concluded: "Accordingly, the trial court could not consider this issue on remand." *Id.* (emphasis added). It is axiomatic that the court below, on remand, must comply strictly with the mandate of the higher court. *Commonwealth v. Tick, Inc.,* 431 Pa. 420, 246 A.2d 424, 426 (1968).

¶ 8 *Commonwealth v. Easton,* 338 Pa.Super. 509, 488 A.2d 8 (1985), is markedly analogous to this case. In *Easton,* this Court entered a remand order stating, in pertinent part: "AND NOW, this 3rd day of November 1982, [u]pon consideration of appellant's Petition for Remand for Evidentiary Hearing on ineffective assistance of counsel claim, said petition is granted and, accordingly, the case is hereby remanded." *Id.* at 9.

¶ 9 After remand, the case was again appealed to this Court. We described the proceedings in the trial court as follows:

On remand, the PCHA court recognized that this court had remanded for an evidentiary hearing, slip op. at 2, but nonetheless did not hold such a hearing, instead ordering that appellant file specific reasons for relief, and eventually denying any relief on the ground that appellant's response to its order for specificity was untimely, unverified, and the reasons alleged were "frivolous and ha[d] no support in the record," slip op. at 3-4. The PCHA court cited *Commonwealth v. Pettus,* 492 Pa. 558, 424 A.2d 1332 (1981), in support of its position that it had "a right, if not a duty, [under the Post Conviction Hearing Act] to request specific grounds" for the allegations in the petition. Slip op. at 3.

*Pettus* is not on point. It held that remand is not appropriate where petitioner only alleges boilerplate reasons why counsel was ineffective. *Cf. Commonwealth v. Brown,* 313 Pa.Super. 256, 459 A.2d 837 (1983). Here, the correctness of the remand order was not before the PCHA court. While a PCHA court in the first instance has the authority to order further specificity of the allegations, Pa.R.Crim.P. 1502(c), the PCHA court here was not in the position of reviewing the allegations of the PCHA petition until after this court's order remanding the case for an evidentiary hearing.

"It [is] the duty of the court below, on remand, to comply strictly with our mandate ...." *Commonwealth v. Tick, Inc.,* 431 Pa. 420, 425, 246 A.2d 424, 426 (1968). "A lower court is without power to modify, alter, amend, set aside or in any manner disturb or depart from the judgment of the reviewing court as to any matter decided on appeal." *Haefele v. Davis,* 380 Pa. 94, 98, 110 A.2d 233, 235 (1955). *See also Commonwealth v. Romberger,* 474 Pa. 190, 378 A.2d 283 (1977); *Drew v. Laber,* 277 Pa.Super. 419, 419 A.2d 1216 (1980).

Order reversed and case remanded for an evidentiary hearing.

*Easton,* 488 A.2d at 9 (footnote omitted; emphasis added).

■ ¶ 10 The learned trial judge who conducted the remand proceedings in this case was aware of these principles. He cited some of the preceding cases relating to a lower court's duty to comply with a remand order. Therefore, it is clear that he did not interpret the Supreme Court's order as requiring an evidentiary hearing. Appellant, on the other hand, alleges that what happened in *Easton* also occurred in this case. He reads the Supreme Court's remand order as a directive to the trial

court to conduct an evidentiary hearing before it decides the remaining issues specified in the remand order. Appellant's Brief at 18–21.

¶ 11 To interpret the remand order, it is necessary to examine the context of the order. The order itself does not mention an evidentiary hearing. On the other hand, as Appellant argues, there are statements in the opinion of the Court that suggest the need for a hearing to create an evidentiary basis for decision. *Id.* at 13–17, 28–29.

¶ 12 For example, the Court stated:

Here we are assuming that the legislative findings set forth above, *see supra* note 14, are substantially valid. Since the common pleas court upheld [Appellant's] challenge to Megan's Law II without a hearing, at this juncture there is nothing of record to bring such findings into dispute, nor has there been factfinding in this regard.

*Williams,* 832 A.2d at 978 n. 17 (emphasis added).

¶ 13 Appellant also quotes another portion of the Supreme Court's opinion:

Still, one of the most troubling aspects of the statute is that the period of registration, notification, and counseling lasts for the [SVP's] entire lifetime. A reasonable argument could be made that, to avoid excessiveness, the Legislature was required to provide some means for [an SVP] to invoke judicial review in an effort to demonstrate that he no longer poses a substantial risk to the community. This aspect of the statute may be particularly problematic if the definition of "[SVP]" is incapable of reasonably precise implementation, as explained below. Notably, however, the position that a means for subsequent judicial review is a necessary feature of any valid registration [or] notification scheme assumes that, given sufficient time ... or treat-

ment, [SVPs] can be fully cured of the "mental abnormality or personality disorder [making them] likely to engage in predatory sexually violent offenses." 42 Pa.C.S. § 9792 (defining "[SVP]"). As the record is devoid of any information concerning the prospect of successful treatment of such individuals, the presumption of constitutionality enjoyed by all validly enacted legislation remains unrebutted.

*Id.* at 982–983 (emphasis added; footnote and citation omitted).

¶ 14 Finally, Appellant points to a footnote in the opinion that supports his argument: "Nothing in this opinion should be read to foreclose the proffer of competent evidence on remand on consideration of [Appellant's] void-for-vagueness challenge, *see infra* note 27, and its implications in terms of the remedial versus punitive dynamics of the statute." *Id.* at 984 n. 23 (emphasis added). Appellant avers that he was prepared to present evidence to support his punitiveness argument. Assisted by *amicus curiae* American Civil Liberties Union, Public Defender Ass'n of Pennsylvania, Defender Ass'n of Philadelphia, and Pennsylvania Ass'n of Criminal Defense Lawyers, Appellant has amassed substantial evidence in support of his challenge to Megan's Law II. He identified this evidence in his motion for an evidentiary hearing, yet the trial court denied the motion for a hearing. Appellant's Brief at 19–20.

¶ 15 When we examine the passages from the · Supreme Court's opinion in *Williams* quoted above, Appellant's interpretation of the opinion is persuasive. It appears that the Supreme Court made a "provisional" decision rejecting Appellant's argument that other aspects of the statute were excessive and, therefore, punitive. *See,* Appellant's Brief at 16. The Court's

ruling was based in large part on the absence of a record to support Appellant's argument and the trial court's holding that the statute was unconstitutional. Footnote 23, especially, cautioning that nothing in the opinion should be read to foreclose the proffer of competent evidence on remand, is a strong signal that the Court expected an evidentiary hearing to be held.

¶ 16 Such a hearing would have permitted the trial court to base its constitutional decisions on an evidentiary record that avoids the quoted defects highlighted by the Supreme Court above.[5]Accordingly, we hold that the trial court should have held an evidentiary hearing in keeping with the implicit mandate of *Williams.*

■ ¶ 17 Even if we were not fully convinced that the Supreme Court's order required an evidentiary hearing, the trial court's absolute obligation to comply with the Court's directive mediates in favor of holding such a hearing if there is any ground to interpret the order as requiring a hearing. In other words, any doubt should be resolved in favor of holding the hearing.

¶ 18 "Our [S]upreme [C]ourt has instructed us that the formal purpose of the Superior Court is to maintain and effectuate the decisional law of the Supreme Court of Pennsylvania as faithfully as possible. *Commonwealth v. Dugger,* 506 Pa. 537, 545, 486 A.2d 382, 386 (1985)." *Commonwealth v. Simmons,* 388 Pa.Super. 271, 565 A.2d 481, 484 (1989). In *Dugger,* the Supreme Court reversed our order and reprimanded this Court for failing to follow its decisional law precisely. *Dugger,* 486 A.2d at 386–387. In keeping with the purpose described in *Dugger* and the guid-

ance provided therein, it is our duty to enforce the orders of our Supreme Court when we believe that a trial court has failed to follow the law set down by our highest Court. As discussed above, it appears that the trial court failed to follow the Supreme Court's directive in this case. Accordingly, we will vacate the order of the trial court and remand for an evidentiary hearing.

¶ 19 A related question arises with respect to the trial court's review of three other issues remanded by the Supreme Court. As set forth by the trial court in its opinion quoted above, the trial court was directed to consider Appellant's claims that Megan's Law II:(1) is void for vagueness; (2) is violative of substantive due process guarantees; (3) is violative of the separation of powers doctrine; and (4) contains more than one subject in contravention of Article 3, § 3 of the Pennsylvania Constitution.

¶ 20 In reviewing the first issue, that Megan's Law II is void for vagueness, the trial court did not analyze the issue. Instead, the court noted that this Court had recently decided in *Commonwealth v. Rhoads,* 836 A.2d 159 (Pa.Super.2003), that Megan's Law II is not overly vague. The trial court stated that "the vagueness issue raised in *Rhoads* is the same as the void for vagueness argument raised by [Appellant] in the case at bar...." Moreover, "this court is bound to follow the ruling of the Superior Court in *Rhoads.*" Trial Court Opinion, 1/27/04, at 11.

¶ 21 With respect to the second issue, that Megan's Law II violates substantive due process guarantees, the trial court again found itself bound by a recent deci-

---

5. For this reason, we respectfully disagree with the position taken by our esteemed colleague, Judge Ford Elliott, that the trial court has already addressed all of Williams's legal issues. The trial court failed to address the

key claim of excessiveness. Moreover, as noted above, our Supreme Court strongly implied that this issue must be resolved not as a matter of law, but, rather, through an evidentiary hearing.

sion of this Court, *i.e., Commonwealth v. Haughwout,* 837 A.2d 480 (Pa.Super.2003). As in the previous issue, the trial court applied this Court's holding. "The substantive due process violation argument that the defendant in *Haughwout* makes is nearly identical to the argument made by [Appellant] in the case at bar. Accordingly, ... this court must also reject [his] argument that such is a violation of [his] substantive due process rights." Trial Court Opinion, 1/27/04, at 14–15.

¶ 22 The trial court similarly treated the fourth issue remanded by the Supreme Court, namely, the claim that Megan's Law II violates the "one subject" rule embodied in the Pennsylvania Constitution, Article III, § 3.[6] The trial court held that *Rhoads, supra,* foreclosed further consideration of the issue, since *Rhoads* held that "Megan's Law II does not violate Pa. Const. Art. 3, § 3 where it addresses only one subject matter or, at worst, addresses several subjects that are all germane to one general subject." Trial Court Opinion, 1/27/04, at 17–18. Thus, the trial court did not consider the issue, believing itself bound by this Court's holding in *Rhoads.*

■ ¶ 23 We fully appreciate the dilemma facing the trial court. Nevertheless, the remand order from the Supreme Court superseded the principle that the courts of common pleas are bound to follow the decisional law of this Court. Because the Supreme Court ordered the trial court to decide these issues, the trial court was

empowered and, indeed, required to make its own assessment of the issues remanded for resolution. Thus, on remand from this Court, the trial court should review these issues and make an independent determination. Its conclusions may be the same as those of *Rhoads* and *Haughwout,* but not because those cases are binding on the trial court.

■ ¶ 24 Finally, we must address the Commonwealth's argument that this appeal is not properly before this Court because Appellant does not have standing to appeal. Pa.R.A.P. 501 limits the right of appeal to "aggrieved parties." An "aggrieved party" is one who has a substantial interest at stake, *i.e.,* an interest that surpasses the common interest of all citizens in procuring obedience to the law, a party who is directly and adversely affected by the decision from which appeal is taken, and whose harm is direct, immediate, and substantial. *Commonwealth v. J.H.,* 563 Pa. 248, 759 A.2d 1269, 1271 (2000).

¶ 25 The Commonwealth argues that, because Appellant was evaluated by the Sexual Offenders Assessment Board and determined not to be an SVP, he is not aggrieved by any terms of Megan's Law II that apply to SVPs.[7] Thus, the Commonwealth concludes that Appellant does not have standing to appeal because he is not aggrieved by any provisions in Megan's Law II. Appellant responds that the law of the case prevents the conclusion that he lacks standing, citing *Commonwealth v.*

6. Pa. Const. Article III, § 3 states: "No bill shall be passed containing more than one subject, which shall be clearly expressed in its title, except ..." for unrelated exceptions.

7. The Commonwealth cites nothing in the certified record to substantiate that Appellant was evaluated by the Board and determined not to be an SVP. The Commonwealth has attached to its brief a copy of a letter dated 6/12/01 from Diane L. Dombach, Executive

Director of the State Sexual Offenders Assessment Board, in response to a court order dated 3/21/01, which states that the court-ordered assessment was performed and that the Board member determined that Appellant does not meet the criteria of an SVP. Without a citation by the Commonwealth, however, we did not find the letter in the voluminous certified record.

*Ogrod,* 576 Pa. 412, 839 A.2d 294, 307 (2003), and *Commonwealth v. Starr,* 541 Pa. 564, 664 A.2d 1326, 1331 (1995). Appellant claims that on the prior appeal, the Supreme Court addressed his constitutional arguments related to Megan's Law II. This was true even though, at that time as now, he was not subject to the SVP provisions of Megan's Law II. Thus, Appellant argues, the Supreme Court implicitly held that he had standing to appeal, even without being classified as an SVP.

¶ 26 Although the Commonwealth's argument is persuasive at first blush, we hold that Appellant is correct in arguing that the law of the case establishes his standing to appeal. In other words, in the prior appeal, the Supreme Court addressed Appellant's constitutional challenge to Megan's Law II even though he had not been classified as an SVP. That procedure must, we believe, be interpreted as an implicit conclusion by the Supreme Court that Appellant had standing. Therefore, we conclude that the law of the case established by the Supreme Court's prior decision requires us to reject the Commonwealth's argument that Appellant does not have standing as an aggrieved party.

¶ 27 Accordingly, we vacate the order of the trial court and remand for an evidentiary hearing on all of the issues identified by our Supreme Court in footnote 27 of *Williams,* including punitiveness.

¶ 28 Order vacated. Case remanded for evidentiary hearing in accordance with this opinion. Jurisdiction relinquished.

¶ 29 FORD ELLIOTT, J.: files Dissenting Statement.

FORD ELLIOTT, J., Dissenting:

¶ 1 I respectfully dissent. I believe the trial court properly complied fully with our Supreme Court's remand and considered the remaining issues presented by appellant. Those issues, as questions of law, have since been addressed by this court; and therefore, the trial court is bound by the decisions of the Superior Court. Alternatively, if an evidentiary hearing was required, any new evidence presented would unavoidably highlight appellant's problems with standing. I would affirm the trial court.