J-A19024-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ESTATE OF STELLA FABIAN, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: MARIE T. KREPICZ, AS INDIVIDUAL AND CO-EXECUTOR, CHARLES R. TRESKOT, AS INDIVIDUAL AND CO-EXECUTOR, CAROLYN J. KUTTA, AND ROBERT A. TRESKOT | : : : : : : | No. 302 EDA 2021 |

Appeal from the Decree Entered December 31, 2020
In the Court of Common Pleas of Carbon County
Orphans' Court at No. 16-9051

BEFORE:   DUBOW, J., MURRAY, J., and COLINS, J.*

MEMORANDUM BY MURRAY, J.:                **FILED SEPTEMBER 24, 2021**

Marie T. Krepicz and Charles R. Reskot, individually and as co-executors, and Carolyn J. Kutta and Robert A. Treskot (collectively, Appellants), appeal from the decree entered following remand from this Court, in which the orphans' court granted the appeal from probate of the Last Will and Testament of Stella Fabian, Deceased (Testatrix), and ordered Testatrix's will dated June 20, 2014 "stricken as invalid," and Testatrix's will dated December 29, 1988 "be probated."  After careful review, we affirm.

In our prior decision, we summarized the case history as follows:

Testatrix died on January 31, 2016.  Her husband predeceased her, as did her daughter, Barbara Fabian, with whom she was very close and had resided for several decades.  Testatrix left a will dated June 20, 2014, in which she left the entirety of her estate

---

* Retired Senior Judge assigned to the Superior Court.

to her nieces, Carolyn J. Kutta and Marie T. Krepicz, and her nephews, Robert A. Treskot and Charles R. Treskot (collectively, "Proponents"), in equal shares. Testatrix appointed Marie and Charles as co-executors. The 2014 will superseded a prior will, dated December 29, 1988, in which Testatrix left her entire estate to Barbara and, in the event Barbara predeceased her, to the following individuals: Robert Treskot, 10%; Carolyn Treskot Kutta, 5%; Marie Krepics [sic], 10%; Susan [sic] Fabian (now Sullivan) (great-niece), 10%; Michelle Fabian (now Kratzer) (great-niece), 5%; Jennifer Fabian (now Slade) (great-niece), 10%; Louise Fabian (now Benson) (niece-in-law), 10%; Gregory Fabian (nephew), 5%; the children of Katherine Kralik, 25%; Mary Redline (niece), 5%; and Sacred Heart Church, 5%. See Will of Stella Fabian, 12/29/88, at Item Third.

The 2014 will was admitted to probate on February 16, 2016, and letters testamentary were granted to Marie and Charles. On May 27, 2017, Contestants filed a "Petition for Citation to Show Cause Why Appeal from Probate Should Not Be Granted and Certain Writing Offered as Will Vacated." In their petition, Contestants alleged that: Testatrix's 2014 will was the product of undue influence exercised upon Testatrix by Marie and Charles; Testatrix lacked capacity to execute a valid will; the will was the product of fraud exercised upon Testatrix by Marie; and the will was the product of a mistake on the part of Testatrix and did not represent her true testamentary intent.

Proponents filed a response to the petition on July 7, 2016. Hearings were held on January 18, 2017, April 20, 2017, and July 21, 2017. By decision and decree issued on June 28, 2017, the court denied Contestants' appeal from probate.

*Estate of Fabian*, 222 A.3d 1146 (Pa. Super. 2019) (citation to record omitted).

In our prior opinion, we vacated the orphans' court's decision and remanded with instructions. We first held, although we found it to be harmless, that the orphans' court erred in failing to qualify Georgia Young, RN, the Director of Nursing at the personal care home where Testatrix resided,

- 2 -

as an expert on mental capacity. *Id.* at 1147-49. Further, we determined

the court erred in finding Testatrix did not suffer from a weakened intellect

and Contestants had not made a *prima facie* showing of undue influence. *Id.*

at 1149-52. We reasoned:

> In the conclusions of law contained in its Decision issued on June 28, 2018, the Orphans' Court discounted the testimony of Dr. [John] Bosi [Testatrix's physician] and Nurse Young regarding Testatrix's history of Alzheimer's and dementia. Instead, the court relied on the testimony of the scrivener of the will, Michael Greek, Esquire, and his two employees who were present with him at the time Testatrix executed her will. In doing so, the court concluded that Testatrix did not suffer from a weakened intellect because she was "quite lucid at the time she executed the contested will." Orphans' Court Decision, 6/28/18, at 15. This was clearly a misapplication of the law. [***In re Clark's Estate***], [334 A.2d 628, 632 (Pa. 1975)] (mental condition of testator on date of execution not as significant when reflecting upon undue influence as when reflecting upon testamentary capacity).
>
> * * *
>
> Nevertheless, in the body of its opinion, the court continued to place almost exclusive emphasis on the testimony of Attorney Greek, who met Testatrix twice: on June 13, 2014, and on the date of execution, June 20, 2014. The court focused on the Testatrix's ability to identify family members and express herself and her testamentary wishes. The court stated that "[i]f Attorney Greek had suspected [Testatrix] was subject to undue influence, he would have stopped the will consultation process." [Orphans' Court Decision] at 7. However, the court misses the point. As noted above, because undue influence is generally accomplished by a "gradual, progressive inculcation of a receptive mind," the "fruits" of the undue influence may not appear until long after the weakened intellect has been played upon. ***Clark***, 334 A.2d at 634. Thus, Attorney Greek—a stranger to the Testatrix—could have had no way of knowing whether, in the weeks and months prior to his two meetings with Testatrix, her mental state could have rendered her susceptible to the undue influence of third parties. Once again, evidence of Testatrix's mental state at the time of execution is of substantially less probative value to an

- 3 -

undue influence inquiry than it is to a determination of testamentary capacity. As both Dr. Bosi and Nurse Young testified, patients with Alzheimer's dementia can have "good days" and "bad days."

* * *

"[T]he scrivener of a will, especially if a lawyer, is always an important and usually the most important witness in a contested will case, and, *where the lawyer knew the testator prior to the execution of her will*, his testimony showing voluntary and intelligent action by the testator makes out a *prima facie* case that requires very strong evidence to offset it." **In re Mampe**, 932 A.2d 954, 961 (Pa. Super. 2007) (emphasis added). Here, however, where Attorney Greek had never met Testatrix until seven days before she executed her will, this principle is inapplicable. **See id.** (testimony regarding testatrix's voluntary and intelligent actions by scrivener unfamiliar with testatrix not dispositive of question of testatrix's weakened intellect).

In light of the Orphans' Court's clear failure to apply the correct standard to its weakened intellect analysis, we review the evidence presented in light of the correct standard. Our review of the evidentiary record constrains us to conclude that the court erred in failing to find that Testatrix suffered from a weakened intellect in the period leading up to the execution of her will. The disinterested testimony regarding Testatrix's cognitive state during the relevant time period demonstrates, by clear and convincing evidence, that Testatrix suffered from a weakened intellect in the period leading up to the execution of the June 20, 2014 will.

**Estate of Fabian**, 222 A.3d at 1150-52 (emphasis in original).

We explained that because the orphans' court found Contestants had met the remaining prongs[1] to establish a presumption of undue influence, "the

---

[1] The orphans' court found "the testator was in a confidential relationship with Proponents, who [] receive[d] a substantial benefit under the will. Neither party challenged those determinations on appeal." **Fabian**, 222 A.3d at 1152.

burden shift[ed] [to] Proponents to demonstrate the absence of undue influence by clear and convincing evidence." *Id.* at 1152 (citation omitted). We vacated and remanded "for determination by the Orphans' Court as to whether Proponents established by clear and convincing evidence, the absence of undue influence." *Id.*

On remand, all parties submitted supplemental proposed findings of fact and conclusions of law. On December 31, 2020, the orphans' court issued its decree and decision stating:

> In light of the Superior Court's reversal and remand, we recognize that the burden has shifted to [Appellants] to demonstrate by clear and convincing evidence, the absence of undue influence.
>
> * * *
>
> [Appellants] did not present any further disinterested witnesses [other than Attorney Greek and his employees] to testify to the mental condition of [Testatrix] in the weeks leading up to the Execution of her Will.
>
> * * *
>
> [Appellants] have not presented sufficient evidence to rebut the testimony of Dr. Bosi and Nurse Young that [Testatrix's] condition was consistent with a diagnosis of moderate to severe Alzheimer's Disease and advanced dementia.
>
> * * *
>
> [Appellants] have failed to establish, by clear and convincing evidence, the absence of undue influence.

Decision and Decree, 12/31/20, at 20-23.

The orphans' court granted Contestants' petition and appeal, and ordered the June 20, 2014 will stricken, and the December 29, 1988 will

- 5 -

probated.  Appellants timely appealed.  The orphans' court ordered Appellants to file a concise statement of errors complained of on appeal,[2] after which the court issued an opinion.

Appellants present a single question for review:

Did the Orphans' Court Judge Commit an Error of Law and/or Abuse His Discretion When He Concluded that the Appellants Had Not Proven the Absence of Undue Influence by Clear and Convincing Evidence?

Appellants' Brief at 5.

Appellants challenge the weight of the evidence.  We have stated:

[W]e accord the findings of the Orphans' Court, sitting without a jury, the same weight and effect as the verdict of a jury; we will not disturb those findings absent manifest error; as an appellate court we can modify an Orphans' Court's decree only if the findings upon which the decree rests are not supported by competent or adequate evidence or if there has been an error of law, an abuse of discretion, or a capricious disbelief of competent evidence.

Moreover, we will not reverse the Orphans' Court's credibility determinations absent an abuse of the court's discretion as factfinder.  On the other hand, we are not required to give the same deference to the Orphans' Court's legal conclusions.  Where the rules of law on which the Orphans' Court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree.

*Estate of Edward Winslow Taylor Inter Vivos Trust*, 169 A.3d 658, 663 (Pa. Super. 2017) (citation omitted).

_____

[2] Appellants' 6-page, 10-issue statement is not concise or compliant with Pa.R.A.P. 1925(b)(4).  *See Kanter v. Epstein*, 866 A.2d 394, 401 (Pa. Super. 2004) (finding waiver where prolix Rule 1925(b) statement contained an "outrageous number of issues," "circumvented the meaning and purpose of Rule 1925(b)," and "effectively precluded appellate review").  Instantly, we decline to find waiver.

The resolution of a question as to the existence of undue influence is inextricably linked to the assignment of the burden of proof. Once the proponent of the will in question establishes the proper execution of the will, a presumption of lack of undue influence arises; thereafter, the risk of non-persuasion and the burden of coming forward with evidence of undue influence shift to the contestant. The contestant must then establish, by clear and convincing evidence, a *prima facie* showing of undue influence by demonstrating that: (1) the testator suffered from a weakened intellect; (2) the testator was in a confidential relationship with the proponent of the will; and (3) the proponent receives a substantial benefit from the will in question. Once the contestant has established each prong of this tripartite test, the burden shifts again to the proponent to produce clear and convincing evidence which affirmatively demonstrates the absence of undue influence.

*In re Estate of Smaling*, 80 A.3d 485, 493 (Pa. Super. 2013) (citations omitted). The standard of clear and convincing evidence "is defined as testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'" *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (citation omitted).

Also, the Pennsylvania Rules of Appellate Procedure provide:

**(a) General rule.** On remand of the record the court or other government unit below shall proceed in accordance with the judgment or other order of the appellate court and, except as otherwise provided in such order, Rule 1701(a) (effect of appeals generally) shall no longer be applicable to the matter.

Pa.R.A.P. 2591(a). The Supreme Court has stated, "it has long been the law in Pennsylvania that following remand, a lower court is permitted to proceed only in accordance with the remand order." *Commonwealth v. Sepulveda*, 144 A.3d 1270, 1280 n. 19 (Pa. 2014).

- 7 -

After careful review of the record and prevailing authority, we conclude that no relief is due. Appellants assert the orphans' court misapplied this Court's decision in **Mampe**, **supra**, by failing to give proper weight to the testimony of Attorney Greek. Appellants argue:

> [The orphans' court's] findings and misapplication of the **Mampe** case constitute an abuse of discretion and/or error of law. Michael Greek, an experienced estate planning lawyer, who regularly deals with elderly clients, knew [Testatrix]. Michael Greek had previously met with [Testatrix] when he prepared her Power of Attorney in May 2014.

Appellants' Brief at 27.

Appellants disregard that in the prior appeal, this Court addressed **Mampe** and found it inapplicable. We described Attorney Greek as "a stranger to the Testatrix," and held Attorney Greek's testimony was "less probative," where "Attorney Greek had never met Testatrix until seven days before she executed her will[.]" **Fabian**, 222 A.3d at 1151. The court was bound by our holding. **See Commonwealth v. Williams**, 877 A.2d 471, 474-75 (Pa. Super. 2005) ("It is well-settled that a trial court must strictly comply with the mandate of the appellate court[.]"); **see also Commonwealth v Starr**, 664 A.2d 1326, 1331 (Pa. 1995) (under the law of the case doctrine, "a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter."). Thus, the orphans' court did not err in its consideration of **Mampe**.

Appellants devote the remainder of their argument to claiming that Testatrix did not have a weakened intellect and Appellants did not exert undue influence. Appellants assert the evidence did not demonstrate Testatrix "showed signs of persistent confusion[.]" Appellants' Brief at 30. Again, the issue of whether Testatrix had a weakened intellect was decided in this Court's prior decision and may not be relitigated. **Fabian**, 222 A.3d at 1151-52; **see also Starr**, 664 A.2d at 1331. Appellants also emphasize they "did not isolate [Testatrix]; they drove [her] to visit her daughter and permitted [her] to remain at [sic] Assisted Living Facility when they could have removed her and placed her in one of their homes." Appellants' Brief at 30.

In sum, Appellants disregard our scope of review. They do not address their failure to offer medical testimony to refute the testimony of Dr. Bosi and Nurse Young. They do not explain their failure to offer the testimony of any independent witness to attest to Testatrix's state of mind in the weeks leading to the will change. Rather, Appellants cite evidence favorable to their claim that Testatrix did not have a weakened intellect and Appellants did not exert undue influence, but it is not our role to reweigh the evidence. **Estate of Edward Winslow Taylor Inter Vivos Trust**, 169 A.3d at 663. Accordingly, no relief is due.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/24/2021