J-A13043-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SPENCER GENE RUDOLPH | : | |
| | : | |
| Appellant | : | No. 747 WDA 2023 |

Appeal from the Judgment of Sentence Entered April 14, 2023
In the Court of Common Pleas of Clarion County Criminal Division at
No(s):  CP-16-CR-0000164-2019

BEFORE:  OLSON, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED: May 30, 2024**

Appellant, Spencer Gene Rudolph, appeals from the judgment of sentence imposed on April 14, 2023, after this Court vacated Rudolph's prior judgment of sentence and remanded for further proceedings.  According to Rudolph, the trial court misinterpreted this Court's remand order and erred by not suppressing evidence obtained from the illegal execution of a search warrant at Rudolph's home.  After careful review, we affirm.

We summarized the following pertinent facts and procedural history in our decision in Rudolph's prior appeal in this case, CP-16-CR-0000164-2019 (case 164-2019), and a related, previously-consolidated case docketed at CP-16-CR-0000165-2019 (case 165-2019):

> At the preliminary hearing, the Chief of Police of Clarion Borough, Chief William Peck, was the only person to testify.  Peck confirmed he began investigating the death of [William] Stout from a fentanyl overdose on November 20, 2018.  **See** N.T., 4/9/19, at 22-23.  Peck recounted that he looked through Stout's phone and saw a contact for "Spencer."  **See id.** at 25-26.  He testified he

had separately received information that Rudolph was dealing drugs out of his house, *see id.* at 25, and that a "light bulb went off" connecting that information to the "Spencer" name in Stout's phone. *Id.* at 26. He entered the phone number associated with "Spencer" in Stout's contact list into Facebook Messenger, and Rudolph's Facebook profile emerged. *See id.* At that point, Peck began focusing his investigation into Stout's death on Rudolph. *See id.*

Peck testified he conducted surveillance of Rudolph's house and "observed numerous vehicles com[e] to the house, go inside, come back out within minutes and leave." *Id.* at 11. Peck recounted that he applied for a search warrant for Rudolph's house on February 11, 2019, and the warrant was issued that same day. *See id.* at 6-7, 13. The warrant was then executed on February 13, 2019. *See id.* at 7. Regarding the warrant's execution, Peck testified he waited in his police vehicle while the Pennsylvania State Police "SWAT" team executed the warrant at approximately 6:05 a.m. on February 13, 2019. *See id.* at 14-15. When asked if the state police knocked or waited for a response, Peck replied:

A. I was in a vehicle.

Q. So you don't know?

A. The protocol is they knock and announce. I heard them verbally yelling stuff, so that would be announcing to me, and they were yelling prior to going in.

Q. Did you witness anybody knocking, or no?

A. I did not.

*Id.* at 15-16.

Peck testified the state police made a forced entry and found Rudolph inside the house. *See id.* at 16-17. Peck entered the house afterwards. During a search of the house, the police found multiple controlled substances and drug paraphernalia, including one-half to three-quarters of a pound of marijuana packaged in different amounts, suspected cocaine, as well as stamp bags and other packaging material. *See id.* at 8. Peck interviewed Rudolph, and according to Peck, Rudolph told Peck that he both used and sold drugs. *See id.* at 9, 19-20. Rudolph also told Peck he had worked with Stout. Peck testified that Rudolph originally denied selling heroin or fentanyl to Stout, but then admitted to

selling him five stamp bags of heroin on November 19, 2018. *See id.* at 28. Peck recounted that Stout was found dead inside his home on November 20, 2018. *See id.* at 33.

Peck proceeded to testify about his subsequent investigation into Stout's death and drug activity involving Rudolph. That investigation "revealed a network of drug distribution that spanned multiple counties," [Rudolph's] Brief at 8, and included Rudolph as a "runner" for that network.

These two events that Peck testified to at the preliminary hearing - the search of Rudolph's house and the subsequent investigation into the larger drug network and its connection to Stout's death - led to two separate filings of charges against Rudolph. First, following the search of Rudolph's house, Rudolph was charged on February 15, 2019[,] with multiple drug offenses [in case] 165-[]2019. Specifically, he was charged with four counts of [possession with intent to deliver], two counts of conspiracy, three counts of possession of a controlled substance and one count of possession of paraphernalia. Then, on March 15, 2019, Rudolph was charged [in case] 164-[]2019 with drug delivery resulting in death, corrupt organizations, conspiracy to commit corrupt organizations, criminal use of a communications facility and involuntary manslaughter. All of the charges in both cases were held for court following the preliminary hearing.

Rudolph filed several pre-trial motions: 1) a petition for writ of *habeas corpus*; 2) a motion to suppress his statement - *corpus delicti*; and 3) a motion to suppress evidence based on an unlawful search and seizure.

**Commonwealth v. Rudolph**, Nos. 699 & 700 WDA 2021, unpublished memorandum at *3-6 (footnote omitted) (hereinafter, "**Ruldolph I**").

Notably, for purposes of the issues raised in the present appeal, we mention that in Rudolph's "Motion to Suppress Statement – *Corpus Delecti*," the thrust of his argument was challenging the validity of the search warrant and the legality of the officers' execution thereof. While Rudolph mentioned, in stating the facts of his cases, that he was questioned by Peck after the search of his residence, and he also cursorily claimed that all evidence seized

as a result of the unlawful police entry must be suppressed as fruits of an unlawful search which violated his rights, Rudolph did not develop any argument that his statement to Peck should be suppressed as fruit of the illegal search of his home.

Likewise, Rudolph did not address any basis to suppress his statement to Peck in his "Motion to Suppress – Unlawful Search and Seizure." Instead, in that motion,

> Rudolph challenged the search warrant for his house on several fronts. He argued that the search warrant was not supported by probable cause, that the warrant was defective as it did not mark the date and time of its issuance, and that the search warrant had been unlawfully executed. As to this last assertion, the suppression motion specifically averred the police "failed to provide [Rudolph] with sufficient time to open the door and allow them to enter," and that the police entry was therefore unreasonable under the "knock and announce" rule. Motion to Suppress - Unlawful Search and Seizure, 8/14/19, at 4 (unpaginated).

*Rudolph I*, Nos. 699 & 700 WDA 2021, unpublished memorandum at *6.

In response to Rudolph's pretrial motions to suppress,

[t]he trial court … held a joint suppression hearing on all three motions on October 7, 2019. At the beginning of the hearing, the Commonwealth stated:

> [T]here are three separate motions that were filed. [One] motion was the motion to suppress unlawful search and seizure. That was based on a warrant that was issued for the search in [] Rudolph's residence in which [Rudolph argued that the warrant] was not supported by probable cause, and therefore, the fruits of that search shall be suppressed. That would be the four corners of the search warrant issue, so I'll just move to admit Commonwealth's Exhibit A which is that search warrant. It is two pages: the front cover and the affidavit of probable cause.

N.T., 10/7/19, at 3-4. When defense counsel was asked if there was any objection, he replied there was not. ***See id.*** at 4.

The court admitted the search warrant into evidence. The affidavit of probable cause provided more information supporting the search warrant in addition to that testified to by Peck at the preliminary hearing. For instance, Peck stated in the affidavit that a confidential informant had initially provided Peck with the information that Rudolph was dealing drugs out of his house, and that there were text messages between the confidential informant and Rudolph. Peck also elaborated on the surveillance he had conducted on Rudolph's house. He recalled that on February 8, 2019, he had seen three vehicles pull up to Rudolph's house in a manner that he described as consistent with drug-related activity. Lastly, Peck averred in the affidavit that on February 9, 2019, the police contacted a confidential informant to arrange a controlled drug buy with Rudolph, and the confidential informant then purchased ten stamp bags of purported heroin/fentanyl inside of Rudolph's house that same day.

After the search warrant was admitted into evidence, Peck was called to testify at the suppression hearing. As with the preliminary hearing, Peck was the only witness the Commonwealth called to testify at the suppression hearing. Peck's suppression hearing testimony, however, was not relevant to the motion to suppress based on an unreasonable search and seizure. Instead, Peck's testimony primarily focused on a discussion of stamp bags and their use in drug-related activity.

Following the suppression hearing, the court asked the parties for briefs. In its brief-in-opposition, the Commonwealth recognized Rudolph had specifically argued in his suppression motion and his brief-in-support that the execution of the search warrant had violated the "knock and announce" rule. The Commonwealth also acknowledged it had relied on the four corners of the search warrant at the suppression hearing to establish the constitutionality of the search warrant. It recognized in its brief, however, that this reliance on the search warrant itself was not sufficient to establish that the warrant had been lawfully executed and that it had "mistakenly overlooked" Rudolph's issue regarding the warrant's execution.

Despite its mistake, the Commonwealth noted there had been testimony at the preliminary hearing that briefly touched on the execution of the warrant. The Commonwealth argued that such

testimony, which had been incorporated into the suppression hearing record, was sufficient to refute Rudolph's claim that the police had violated the "knock and announce" rule. In the alternative, the Commonwealth asserted that because the issue was "mistakenly not addressed at the time of the [suppression] hearing," the court should essentially remand for a second suppression hearing in the event that it "need[ed] further testimony before making a decision" on Rudolph's challenge to the constitutionality of the warrant's execution. Commonwealth's Brief in Opposition to Defendant's Omnibus Pretrial Motions, 10/28/19, at 9-10.

The trial court did not remand for further testimony. Instead, it denied all three of Rudolph's pre-trial motions. In denying the motion to suppress based on an unreasonable search and seizure, the court found the search warrant had been supported by probable cause and that it had been properly executed. As for the latter, the court concluded Peck's testimony that the protocol for the state police was to "knock and announce" and that the police had yelled before entering Rudolph's house was sufficient to establish there had been no violation of the "knock and announce" rule.

The matters proceeded to two separate jury trials. [In case] 165-[]2019, the jury found Rudolph guilty of two counts of PWID, three counts of possession of a controlled substance and one count of possession of drug paraphernalia. [In case] 164-[]2019, the jury convicted Rudolph of all counts with the exception of involuntary manslaughter, which had been *nolle prossed*. The court held a joint sentencing hearing for both dockets on August 26, 2020. The court sentenced Rudolph at both cases to an aggregate term of imprisonment of 169 months to 392 months. Rudolph appealed from both judgments of sentence, and this Court *sua sponte* consolidated the two. Rudolph raise[d] the following singular issue in both appeals:

> Whether the lower court erred in denying [Rudolph's] suppression motion related to a search warrant for one or more of [three] reasons: 1) lack of probable cause for issuance; 2) defect in application and approval; and 3) violation of Pa.R.Crim.P. 207 [codifying the "knock and announce" rule].

- 6 -

**Rudolph I**, Nos. 699 & 700 WDA 2021, unpublished memorandum at *6-10 (footnote omitted).

In **Rudolph I**, we ultimately concluded that the Commonwealth had failed to "meet its burden of proving that, contrary to what Rudolph explicitly alleged in his suppression motion, the police complied with Rule 207 when executing the warrant to search his house." **Id.** at *13 (footnote omitted). Thus, we found "that the trial court erroneously denied Rudolph's suppression motion…." **Id.** at *17. Notably, the **Rudolph I** panel made no mention of the suppression of Rudolph's post-search statement to Peck, presumably because Rudolph did not present any developed argument — either before this Court or in any of his pretrial motions or briefs filed in the trial court — that his statement should have been suppressed as 'fruit of the poisonous tree' of the illegal search of his home. In the end, the **Rudolph I** panel issued the following order:

> Judgments of sentence vacated. Order denying suppression of **evidence obtained during the search of [Appellant's] home** reversed. Remanded to the trial court to conduct proceedings consistent with this Memorandum. Jurisdiction relinquished.

**Id.** at *18 (emphasis added).

On remand, Rudolph filed a "Petition for Writ of *Habeas Corpus*." He contended that, "to comply with the terms of the Superior Court Opinion, this … [c]ourt should make a determination as to what evidence should be suppressed." Petition for Writ of *Habeas Corpus*, 3/6/23, at 1 (unnumbered). Specifically, Rudolph argued his post-search statement to Peck, as well "as his

cell phone" that was allegedly "seized as a result of the warrant" should be suppressed.[1]  *Id.* at 1-2 (unnumbered).  The court conducted a hearing that same day.  At the hearing, the Commonwealth essentially argued that our decision in **Rudolph I** was "very specific" and applied only to "the controlled substance[s] and contraband [found] at the house."  N.T. Hearing, 3/6/23, at 10.  Conversely, Rudolph argued that our decision applied to his statement and "all pieces of evidence that were obtained by law enforcement as a result of the interviews that directly resulted from the search that took place in his home."  *Id.* at 12.  Ultimately, the trial court observed that "the only thing the Superior Court based its opinion and order on was the suppression motion[,]" and not the other two pretrial motions Rudolph had filed, including his "Motion to Suppress Statement – *Corpus Delecti*."  *Id.* at 14.  The court reasoned:

> You know the issues with his statements, I think the Superior Court didn't address, they addressed just the suppression motion and said, you know, we need to act in accordance with that.  So, as far as that's concerned, I do think in trying to act in accordance with the opinion we received from the Superior Court, I've been tasked with determining what evidence should have been suppressed due to the fact that the search warrant was not properly executed.  And so, in reading the opinion, and then looking specifically at that warrant and what information was obtained, or what, I guess, material was obtained in connection with that warrant, I do agree that all the charges at [c]ase 165[-2019] are directly related to the substances that were confiscated during the search, and so all of those charges have to go.  At [c]ase 164[-2019], … there's been reference to the fact that the

---

[1] Rudolph presents no developed argument on appeal regarding this cell-phone suppression claim.  Accordingly, we do not address it.

warrant was served[,] and I certainly understand [Rudolph's] argument that things that happened after the warrant were served are kind of connected, but purely looking at the Superior Court's opinion, they don't address those things. They don't address the impact of the service o[f] the warrant on anything that would have happened after [] Rudolph would have been in detention, and for that reason, I don't really see the items being seized through the search having really any impact on the charges at [c]ase 164[-2019]. I do think though, in light of the opinion, that [] Rudolph will now need to be re-sentenced on the charges at that case, but I don't think that the suppression of evidence obtained from the search has really any impact on the verdict in those cases, mainly due to the fact that the substances … that are at issue in that case were not the substances that were found in his home. And … I think that the Commonwealth still could have made reference to the fact that a warrant was served even if the items obtained by that warrant were suppressed. So, I am going to obviously grant the petition as far as all the charges at [c]ase 165[-2019]. Case 164[-2019], I don't see there really being any impact, so I am going to deny the motion as far as the charges at [that c]ase … are concerned….

*Id.* at 15-16.

Accordingly, the charges against Rudolph in case 165-2019 were dismissed, and on April 14, 2023, the court re-sentenced Rudolph at case 164-2019 to 35 to 72 months' incarceration. Rudolph filed a timely, post-sentence motion, which the court denied. He then filed a timely notice of appeal,[2] and complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise

---

[2] Rudolph's notice of appeal incorrectly states he is appealing from "the Order entered in this matter on the 14th day of May, 2023." Notice of Appeal, 6/26/23, at 1 (unnumbered). This mistake appears to be inadvertent, and therefore, we will overlook it. *See Commonwealth v. Whitmire*, 2021 WL 1157198, at *3 n.4 (Pa. Super. filed Mar. 25, 2021) (stating that, "although the notice had the wrong order date, this appears to be inadvertent and did not affect the notice's validity"); *see also* Pa.R.A.P. 126(b) (providing that unpublished, non-precedential memorandum decisions of this Court filed after May 1, 2019, may be cited for their persuasive value).

statement of errors complained of on appeal. The court thereafter issued a Rule 1925(a) statement indicating its reliance on its March 6, 2023 order denying Rudolph's petition for writ of *habeas corpus* to support its decision.[3] Herein, Rudolph states one issue for our review: "Whether the lower court erred in failing to suppress all evidence that resulted from the illegal execution of a search warrant?" Rudolph's Brief at 4.

The main focus of Rudolph's argument is that on remand, the trial court should have suppressed his post-search statement to police because it was "fruit of the poisonous tree," *i.e.*, the illegal search of his home. **Id.** at 8, 12-18 (discussing cases to support his argument that his statement should have been suppressed due to the illegal execution of the warrant in this case, including **Commonwealth v. Chambers**, 598 A.2d 539 (Pa. 1991); **Commonwealth v. Rudisill**, 622 A.2d 397 (Pa. Super. 1993); and **Commonwealth v. Rood**, 686 A.2d 442 (Pa. Cmwlth. 1996)). Rudolph also argues the trial court erred by making "no determination as to the extent of evidence to be suppressed" based on our decision in **Rudolph I**. **Id.** at 18. Essentially, Rudolph claims that on remand, the trial court should have

---

[3] That order essentially reiterates the rationale expressed by the court at the hearing on remand, quoted *supra*. **See** Order, 3/6/23, at 1 (unnumbered single page) ("At [c]ase 164[-]2019[, u]pon review of the record, the items obtained from the search that have been suppressed were not introduced at the trial at [c]ase 164[-]2019. The only evidence regarding the search were passing references to the fact that the search warrant was executed. Therefore, the suppression of evidence would have no impact on the verdict at [c]ase 164[-]2019. The [p]etition for [w]rit of *[h]abeas [c]orpus* regarding the charges at [c]ase 164[-]2019 is denied.").

assessed whether his post-search statement to Peck should be suppressed in light of the illegality of the search of his home. He contends that had the court conducted this assessment, it would have found his statement to Peck (as well as other "evidence obtained from a cell phone or phones collected") should have been suppressed. *Id.* at 21. Thus, Rudolph demands either a new trial with his at-issue statement suppressed or, alternatively, a second "remand … to the lower court with direction that a full suppression hearing take place, whereby the lower court can properly determine what evidence is to be suppressed based on the unlawful execution of the search warrant." *Id.* at 22.

No relief is due. Initially, "[i]t is axiomatic that the court below, on remand, must comply strictly with the mandate of the higher court." *Commonwealth v. Williams*, 877 A.2d 471, 475 (Pa. Super. 2005). Here, the trial court did not err in concluding our remand in *Rudolph I* excluded consideration of Rudolph's claim to suppress his post-search statement. We reiterate that Rudolph did not develop any meaningful argument before the trial court, or this Court on appeal in *Rudolph I*, that his statement (or any other, post-search evidence) should be suppressed as "fruit of the poisonous tree" of the illegal search of his home.[4] *See Commonwealth v. Freeman*,

---

[4] This is in contrast to the defendants in the *Rood* and *Chambers* cases, cited by Rudolph herein. *See Chambers*, 598 A.2d at 540 (reviewing an order granting a motion to suppress that sought, "*inter alia*, to suppress the evidence obtained through the execution of the search warrant[,]" including
*(Footnote Continued Next Page)*

128 A.3d 1231, 1241 (Pa. Super. 2015) (stating that "suppression motions …

must be made with specificity and particularity as to the evidence sought to

be suppressed and the reasons for the suppression") (citation omitted);

***Commonwealth v. Hardy***, 918 A.2d 766, 771 (Pa. Super. 2007) ("When

briefing the various issues that have been preserved, it is an appellant's duty

to present arguments that are sufficiently developed for our review.  The brief

must support the claims with pertinent discussion, with references to the

record and with citations to legal authorities.").

Instead, Rudolph's appeal in ***Rudolph I*** was premised on the trial

court's denial of his motion to suppress evidence seized ***during the search***

***of his home***.[5]     ***Rudolph I***, Nos. 699 & 700 WDA 2021, unpublished

memorandum at *6 (stating that "the only motion at issue in this appeal" was

_____

"drugs and drug paraphernalia [that] were seized ***and several statements [that] were obtained from [] Chambers***" during the search of his home) (emphasis added); ***Rood***, 686 A.2d at 446 (reviewing an order granting in part, and denying in part, Rood's motion seeking suppression of evidence that "included, *inter alia*, ***statements made by Rood***" on the basis "that this evidence was the fruit of an unconstitutional entry onto Rood's property and a subsequent unconstitutional search") (emphasis added).

[5] On remand, Rudolph expressed his disagreement with the ***Rudolph I*** panel's conclusion that he was only challenging the trial court's denial of his motion to suppress the evidence recovered from inside his home.  ***See*** N.T. Hearing at 14 (Rudolph's counsel's claiming "that's not all that was raised" before the ***Rudolph I*** panel).  However, Rudolph did not file a petition for reconsideration of our decision in ***Rudolph I*** on the basis that we overlooked, or mischaracterized, any of his arguments.  Accordingly, we are bound by our decision in ***Rudolph I***.  ***See Interest of S.W.***, --- A.3d ----, 2024 WL 1081646, at *7 (Pa. Super. filed Mar. 13, 2024) ("[A] panel of the Superior Court cannot overrule another panel of the Superior Court.") (citing ***Commonwealth v. Beck***, 78 A.3d 656, 659 (Pa. Super. 2013)).

the court's denial of Rudolph's "motion to suppress evidence based on an unlawful search and seizure" in which Rudolph only developed an argument seeking suppression of the evidence seized from his home during the execution of the search warrant).  Because Rudolph did not develop any meaningful argument, in either the at-issue suppression motion or on appeal to this Court in **Rudolph I**, that his post-search statement to Peck should also be suppressed as fruit of the poisonous tree, this Court in **Rudolph I** did not review whether the trial court erred by not suppressing that statement.  The **Rudolph I** panel was very clear in reversing only the trial court's order denying suppression of the evidence obtained **during the search** of Rudolph's residence.  **See Rudolph I**, **supra**, at *18 ("Order denying suppression of **evidence obtained during the search of Rudolph's home** reversed.") (emphasis added).

Therefore, we conclude that the trial court correctly applied our remand order in assessing only whether any mention of the evidence seized **during** the illegal search of Rudolph's home, or any reference to the search itself, warranted a new trial in case 164-2019.  The court did not err in declining to address Rudolph's argument that his post-search statement to Peck should have also been suppressed, as Rudolph did not develop that issue in pretrial motions or on appeal in **Rudolph I**.  Likewise, we need not address Rudolph's argument that his statement to Peck should have been suppressed as fruit of the poisonous tree of the illegal search of his home.

Judgment of sentence affirmed.

- 13 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 05/30/2024